UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80669-CIV-ZLOCH

UNITED STATES OF AMERICA,

      Plaintiff,

vs.
                                                                 O R D E R

EVENGELOS LENA, JOANNE LENA,
THE A.J.L. TRUST, CHRIS
KACHOUROFF, AS TRUSTEE OF THE
A.J.L. TRUST, CHRISTINA HENLEY,
AS TRUSTEE OF THE A.J.L. TRUST,
and CITIMORTGAGE, INC.,

      Defendants.
_____/

    THIS MATTER is before the Court upon a non-jury trial commencing Tuesday, February 19, 2008. The Court bifurcated the trial and limited the presentation of evidence during the first phase to the following two issues: 1) whether the federal tax liens assessed against Evangelos and Joanne Lena are valid and 2) whether Evangelos and Joanne Lena possess a property interest in certain real property sufficient for Plaintiff to attach.

## I. BACKGROUND

    Plaintiff United States of America commenced the above-styled cause with the filing of its Complaint (DE 1) on July 25, 2005, to collect delinquent taxes, together with penalties and interest thereon, incurred by Defendants Evangelos and Joanne Lena (hereinafter the "Lenas") in the years 1991, 1992, and 1993. The Internal Revenue Service (hereinafter "IRS") made assessments against the Lenas in 1995 and 1996 and filed a lien in 2005 against the real property (hereinafter the "Property") on which the Lenas

live. By this action, Plaintiff seeks to foreclose said lien in satisfaction of the outstanding tax debt. However, in 1994, prior to the IRS tax assessments and imposition of the lien on the Property, the Lenas conveyed the Property by warranty deed to a family trust called the A.J.L. Trust (hereinafter "Trust"). The beneficiaries of the Trust are the Lenas' two sons, Chris Angelo Lena and Theodore A. Lena. Plaintiff's theory of the case is that the Lenas placed the Property in trust in name only and maintained complete control over the same both physically and legally. Thus, Plaintiff seeks to foreclose tax liens assessed against the Property held by the Trust in satisfaction of the outstanding tax debt the Lenas owe.

There are two major components to this case. First, Plaintiff requests that the Court enter a Judgment declaring valid Plaintiff's tax assessments against the Lenas. Second, Plaintiff seeks to foreclose its lien against the Property held by the Trust to satisfy the Lenas' tax debt. Plaintiff has clearly succeeded on the first issue because assessments are presumed valid, and the Lenas failed to rebut that presumption at trial. To succeed on the second issue, Plaintiff must prove either that the Lenas controlled the Trust such that it was their nominee or that the transfer of the Property into the Trust was fraudulent. After observing the demeanor of the witnesses and taking full notice of all the exhibits submitted by the Parties at trial, the Court hereby makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. The Lenas are natural persons against whom Plaintiff has assessed federal tax liens.

2. The Trust was an irrevocable trust created on July 1, 1994, and dissolved on January 9, 2008, after its sole asset had been conveyed to its beneficiaries. The beneficiaries of the Trust were Chris Angelo Lena and Theodore A. Lena, the children of the Lenas. Pl. Ex. 14.[1]

3. Defendant Chris Kachouroff (hereinafter "Kachouroff") served as the sole Trustee of the Trust from July 1, 1994, until an unspecified date in 2005.

4. Defendant Citimortgage, Inc. possesses a mortgage interest in the real property described in paragraph 16 below by virtue of a mortgage assignment, and said interest has priority over Plaintiff's Federal Tax Liens. See DE 41; Transcript, pp. 64, 67 & 69.

5. The Lenas earned a joint adjusted gross income of $67,079.69 in 1991 and $98,476.30 in 1992. Pl. Exs. 1 & 2.

6. Evangelos Lena earned an adjusted gross income of $13,311.00 in 1993. Pl. Ex. 3.

7. On August 1, 1995, the IRS made a "quick assessment" of income tax owed by the Lenas for 1991 in the amount of $10,358.00, plus a penalty of $2,071.60, and an assessment of interest

---

[1] Plaintiff introduced this Exhibit and several others at trial.

accrued in the amount of $3,640.28, for a total of $16,069.88 for 1991. Pl. Ex. 1.

8. On May 13, 1996, the IRS assessed additional income tax owed by the Lenas for 1992 in the amount of $18,663.00, plus a penalty of $3,732.60, and an assessment of interest accrued in the amount of $6,402.78, for a total of $28,798.38 for 1992. Pl. Ex. 2.

9. On April 15, 1996, the IRS assessed additional income tax owed by Evangelos Lena for 1993 in the amount of $1,181.00, plus a penalty of $181.00, and an assessment of interest accrued in the amount of $151.21, for a total of $1,513.21 for 1993. A withholding credit in the amount of $551.00 was subtracted from the outstanding balance, rendering the total outstanding balance at the time of the assessment to be $962.21, for 1993. Pl. Ex. 3.

10. The Lenas were provided notice of the assessments, as required by law, and they have failed to pay in full the assessed liabilities.

11. As of February 25, 2008, the Lenas remain indebted to Plaintiff for their 1991 and 1992 federal income tax liabilities in the amount of $108,444.86, and Evangelos Lena remains indebted for his 1993 liability to Plaintiff in the amount of $2,444.54, plus statutory additions for each day subsequent to February 25, 2008.

12. On October 1, 1996, pursuant to 26 U.S.C. § 6323(f), the IRS

4

      filed in the public records of Palm Beach County, Florida, a Notice Of Federal Tax Lien against the Lenas for their 1991 and 1992 federal income tax liabilities and a Notice Of Federal Tax Lien against Evangelos Lena for his 1993 federal income tax liability.

13. On May 5, 2005, pursuant to 26 U.S.C. § 6323(f), the IRS filed in the public records of Palm Beach County, Florida, a Notice Of Federal Tax Lien against A.J.L. Trust "as nominee of Evangelos & Joanne Lena" with respect to the Lenas' 1991 and 1992 federal income tax liabilities, and a Notice Of Federal Tax Lien against A.J.L. Trust "as nominee of Evangelos Lena" with respect to Evangelos Lena's 1993 federal income tax liability.[2]

14. On July 11, 2005, the IRS refiled, in the public records of Palm Beach County, Florida, a Notice Of Federal Tax Lien against A.J.L. Trust "as nominee of Evangelos & Joanne Lena" with respect to the Lenas' 1991 and 1992 federal income tax liabilities.[3]

---

[2] In the "Name of Taxpayer" section of the Notices, the IRS inserted "A.J.L. Trust, as nominee of Evangelos Lena." The Court does not find this designation to be established as a conclusion of law; rather, the Court merely finds that the designation was made as stated.

[3] In the "Name of Taxpayer" section of the Notice, the IRS inserted "A.J.L. Trust, as nominee of Evangelos & Joanne Lena." The Court does not find this designation to be established as a conclusion of law; rather, the Court merely finds that the designation was made as stated.

15. The Lenas purchased, by warranty deed dated April 28, 1988, and recorded on May 3, 1988, real property located at 217 Bilbao Street, Royal Palm Beach, Florida, with the legal description "Lot 49, Blk K, LaMancha Subdivision, Royal Palm Beach, Palm Beach County as recorded in volume 5656, Page 1466 and plat book 29, page 165 Palm Beach County" (hereinafter the "Property"). Pl. Ex. 6.

16. By mortgage dated April 28, 1988, recorded on May 3, 1988, the Lenas executed a mortgage to Royal Palm Savings Bank upon the Property. Said mortgage was subsequently assigned by Royal Palm Savings Bank to Defendant Citimortgage, Inc.

17. On July 1, 1994, the Lenas conveyed, by warranty deed, the Property to the Trust, with Kachouroff to hold legal title as Trustee. The Trust held no assets other than the Property.

18. The Lenas' children, Chris Angelo Lena and Theordore A. Lena, were the sole beneficiaries of the Trust.

19. On July 1, 1994, Evangelos Lena was appointed by Kachouroff as the General Manager of the Trust. The duties of the General Manager included the operation of the Trust's day-to-day affairs and business matters on behalf of the beneficiaries and the Trustee. The duties included the signing of checks, leases, agreements and other documents, and the hiring of necessary personnel.

20. The buying and selling of, or obligating the Trust to buy or sell, properties and/or goods that exceed Five Thousand

      Dollars ($5,000.00) required a trustee's approval by appropriate minutes and signatory. Pl. Ex. 14, p. 15.

21. Kachouroff served as the Trustee from July 1, 1994, until 2005. Pl. Ex. 9. However, he stated that he did not recall performing any duties on behalf of the Trust. Pl. Ex. 25, Interrogatory 1. The Trust operated without a Trustee from the time of Kachouroff's resignation until David Eye (hereinafter "Eye") was appointed as its Trustee in November 2006 and served as such until April 26, 2007. From April 26, 2007, until January 7, 2008, the Trust again operated without a Trustee. On January 7, 2008, Christina Henley (hereinafter "Henley") was appointed as the Trustee and served as such until the Trust was dissolved on January 9, 2008. Pl. Ex. 9.

22. As the General Manager of the Trust, Evangelos Lena obtained a permit from Palm Beach County, Florida on January 10, 2000, to put a new roof on the Property without the authorization of the Trustee. Mr. Lena was not able to contact the Trustee, who then lived in another state, and urgently needed to repair the roof to protect and preserve the Property. Mr. Lena also paid an unspecified amount for the cost of the repair.

23. Additionally, Mr. Lena made monthly payments to Citimortgage, Inc. for the mortgage on the Property, monthly payments to Florida Power & Light, Co. for utilities to the Property, and annual payments to Palm Beach County, Florida, for property taxes levied on the Property.

24. From July 1, 1994, the date on which the Trust was created and the Property transferred into it, through and including the conclusion of this non-jury trial, the Lenas continued to reside at the Property and claim said Property as their homestead for property tax purposes. Pl. Ex. 23.

25. On June 22, 1994, Evangelos Lena filed in the public records of Palm Beach County, Florida, a "Declaration Of Status," in which he declared several "God given rights" and also declared that he is a "Sovereign Citizen." He further declared that he is a citizen of the State of Florida but not of the United States, and he revoked and rescinded any and all agreements and contracts with the United States Government. Pl. Ex. 16.

26. On June 22, 1994, Joanne Lena filed in the public records of Palm Beach County, Florida, a "Declaration Of Status," in which she declared several "God given rights" and also declared that she is a "Sovereign Citizen." She further declared that she is a citizen of the State of Florida but not of the United States, and she revoked and rescinded any and all agreements and contracts with the United States Government. Pl. Ex. 17.

27. In accord with the direction of Evangelos Lena, Henley conveyed the Property to the sole beneficiaries of the Trust, Chris Angelo Lena and Theodore A. Lena, by quitclaim deed executed and recorded on January 7, 2008. Pl. Ex. 8.

28. On January 9, 2008, by a document entitled "Revocation of

Trust," Evangelos Lena, as settlor of the Trust, dissolved the Trust because it no longer held any assets, and he discharged Henley from further responsibility as Trustee. Pl. Ex. 9.

### III. CONCLUSIONS OF LAW

At this stage in the proceedings, the Court's inquiry is focused on two areas: whether the tax assessments are valid and whether the Lenas possess a property interest in the Property sufficient for Plaintiff to attach a lien in satisfaction of the tax debt. Regarding the latter issue, Plaintiff makes two arguments in the alternative. First, Plaintiff argues that the Trust is the nominee of the Lenas because they have retained a beneficial interest in the Property and exerted exclusive control over the Trust. To prove the Trust is a nominee, Plaintiff relies on caselaw that has been applied to corporations for the purpose of piercing the corporate veil. Although there is no Eleventh Circuit precedent that applies the piercing-the-veil analysis in the trust context, Plaintiff urges the Court to adopt the reasoning of the two district courts in this Circuit that have pierced trusts. Second, Plaintiff argues that the Lenas' transfer of the Property into the Trust was a fraudulent transfer as defined by Florida Statutes § 726.106. And in support of this argument, Plaintiff alleges the transfer was made after the Lenas owed taxes, no consideration was given in exchange for the transfer, and the Lenas were insolvent at the time of the transfer or were rendered insolvent by the transfer.

The Court finds that the assessments are valid. Further, the Court finds that despite the Lenas' conveyance of the Property to the Trust, they retained all property interests in said Property that they possessed prior to the purported transfer because the Trust is the nominee of the Lenas. Accordingly, Plaintiff's tax lien on the Property attaches to every property interest the Lenas possess in the Property.

### A. Validity of Assessment

An assessment of federal tax by the IRS is presumed valid. See United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1985). Once Plaintiff establishes that an assessment was made, the burden shifts to the taxpayer to rebut the presumption of validity by proving the method of computing the tax is arbitrary and without foundation. Olster v. Comm'r, 751 F.2d 1174 (11th Cir. 1985). Plaintiff introduced evidence and testimony sufficient to establish its assessments against the Lenas, and the Lenas failed to offer any evidence with respect to the IRS's method of computation of the tax assessed against them.

Accordingly, the Court finds the above-referenced assessments dated August 1, 1995, April 13, 1996, and May 15, 1996, to be valid. Findings of Fact, ¶¶ 7-9. As of February 25, 2008, the Lenas are indebted to Plaintiff in the amount of $108,444.86 for federal income tax liabilities incurred jointly for the years 1991 and 1992, and Evangelos Lena is indebted to Plaintiff in the amount of $2,444.54 for federal income tax liability incurred in 1993.

<u>Id.</u> ¶ 11.  The Court shall reduce said amounts into its Judgment.

### B. <u>Property Interests of the Lenas</u>

Plaintiff may attach "all property and rights to property, whether real or personal" of the Lenas to satisfy this Judgment. 26 U.S.C. § 6321 (2006).  State law determines the property rights a taxpayer possesses in certain property. <u>Drye v. United States</u>, 528 U.S. 49, 58 (1999).  "The [Internal Revenue Code] creates no property rights but merely attaches consequences, federally defined, to rights created under state law." <u>United States v. Nat'l Bank of Commerce</u>, 472 U.S. 713, 722 (1985).  As noted above, Plaintiff has two theories to support its claim that the Lenas possess property interests in the Property sufficient for Plaintiff to attach in satisfaction of the Lenas' tax debt.  First, Plaintiff alleges that the Trust was not validly created; rather, it is a sham entity that only purports to hold title to the Property as a nominee of the Lenas.  Second, Plaintiff alleges that even if the Trust is found to be valid, the conveyance of the Property from the Lenas to the Trust constitutes a fraudulent transfer under Florida Statutes § 726.106 and should therefore be set aside.

### 1. <u>Validity of the A.J.L. Trust</u>

When a taxpayer attempts to hide assets behind a legal fiction to avoid tax liabilities, courts can pierce the fiction and allow the IRS to attach the assets in satisfaction of an outstanding tax debt.  <u>See</u> <u>G.M. Leasing Corp. v. United States</u>, 429 U.S. 338 (1977); <u>Shades Ridge Holding Co., Inc. v. United States</u>, 888 F.2d

725 (11th Cir. 1989). Controlling caselaw permits the IRS to pierce the corporate veil and attach property held by a corporation when the corporation acts as a nominee or alter ego of a delinquent taxpayer. See, e.g., Shades Ridge, 888 F.2d at 729. In Shades Ridge, the Eleventh Circuit set out three factors to determine whether a corporation was a nominee of a taxpayer: "1) the control the taxpayer exercises over the nominee and its assets, 2) the use of corporate funds to pay the taxpayer's personal expenses, and 3) the family relationship, if any, between the taxpayer and the corporate officers." Id. None of the factors is dispositive. Rather, in making a determination, courts consider all of them in light of the facts and circumstances of each case. Id.

Plaintiff asserts that the piercing-the-veil analysis performed in the corporate context should also be applied to trusts. Two district courts in the Eleventh Circuit have applied the Shades Ridge factors to trusts. United States v. Spiwak, 1995 U.S. Dist. LEXIS 11258, at *7 (S.D. Fla. July 26, 1995) (stating that "there is no basis for distinguishing between a trust and a corporation"); United States v. Bahrs, 2006 WL 2507574 (N.D. Fla. Aug. 29, 2006). The Eleventh Circuit has not yet indicated whether the piercing-the-corporate-veil analysis should be imported into the context of trusts, but other courts have looked past the legal form of entities in determining whether an entity is the taxpayer's alter ego. See, e.g., LiButti v. United States, 107 F.3d 110, 119 (2d Cir. 1997) (applying the piercing-the-veil analysis to a sole

proprietorship and noting "we must avoid an over-rigid preoccupation with questions of structure") (internal quotations and citations omitted). Because the ultimate concern does not lie in the structure itself, but whether a person may hide behind a structure that is no more than the individual's alter ego, the Court finds there is no need to distinguish between a corporation and a trust.

The Court will apply the Shades Ridge factors because they are neutral and have been applied by the Eleventh Circuit in an analogous scenario. In addition to the Shades Ridge factors, Plaintiff cites the following factors from cases in other Circuits to support its allegation that the Trust is the nominee of the Lenas:

> whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; and whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of funds for payments of the expenses.

DE 112, pp. 15-16 (citing Simpson v. United States, 1989 WL 73212, at *6 (M.D. Fla. Apr. 6, 1989); Scoville v. United States, 250 F.3d 1198, 1202 (8th Cir. 2001); Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000); Keeney v. Smith, 227 F.3d 679 (6th Cir. 2000); United States v. Klimek, 952 F.Supp. 1100, 1113 (E.D. Pa. 1997)). Not one of these cases was applied in the context of trusts, nor has one been applied by the Eleventh Circuit

Court of Appeals, and the Court refrains from expanding the law of this Circuit by including these additional factors.

Furthermore, other Circuits have used a panoply of factors to determine whether an entity is a nominee of a taxpayer, such that the IRS can attach a lien against property held by the entity. See, e.g., Loving Saviour Church v. United States, 728 F.2d 1085, 1086 (8th Cir. 1984) (holding that the church was an alter ego of the taxpayer because the family was fully supported by the church's assets)[4]; Oxford Capital Corp. v. United States, 211 F.3d 280 (5th Cir. 2000) (noting that the Fifth Circuit applies a totality of the circumstances test that includes a non-exhaustive list of twelve factors). Although there are numerous factors from which this Court could choose, the Court finds that the application of the Shades Ridge factors is faithful to the Eleventh Circuit's approach to piercing legal fictions. Further, it comports with the approach

---

[4]The court considered the following factors:
> 1) the Andersons treated church assets as their own in that their residence, business and farmland comprised the church property; 2) Dr. Anderson carried insurance on church assets in his own name; 3) there were few internal controls in the church – Dr. Anderson was the minister and a trustee along with his wife, daughter, and sister-in-law; 4) church funds were used to pay personal expenses; 5) there was a close family relationship between the church officers and the taxpayer/founder; 6) the Andersons transferred property to the church for little or no consideration; 7) a car which was in the church's name bore the personalized license "Myrtle;" and 8) <u>the Andersons are fully supported by funds and property of the Loving Saviour Church in whatever style they themselves choose</u>.

Loving Saviour, 728 F.2d at 1086. (emphasis added)

14

taken by two district courts in this Circuit that have previously addressed the Shades Ridge factors to a trust. See Spiwak, 1995 U.S. Dist. LEXIS 11258, at *7; Bahrs, 2006 WL 2507574, at *3.

Plaintiff bears the burden of proving the following Shades Ridge factors establish the Lenas' conveyance of the Property to the Trust amounts to a fraud executed to avoid the payment of tax: 1) the control the Lenas exercised over the Trust and its assets; 2) the use of Trust funds to pay their personal expenses; and 3) the family relationship, if any, between the Lenas and the Trust's officers. See Shades Ridge, 888 F.2d at 729.

The first Shades Ridge factor used to determine whether property is held by a nominee assesses the degree of control the taxpayer exercises over the trust and its assets. See Shades Ridge, 888 F.2d at 729. Plaintiff alleges six facts relevant to this factor. First, the Lenas have continued to live at the Property from the time they purchased it until now and claim it as their homestead. Second, the Trust never assumed the Lenas' obligation under the mortgage on the Property, and thus the Lenas continued to make all mortgage payments. Third, the Lenas utility bills remain in their name and are paid by them personally. Fourth, Evangelos Lena applied for a roofing permit and paid for the repair without consulting Kachouroff, the Trustee. Fifth, Plaintiff argues the Trust was revocable, and sixth, the trustees were mere figureheads who did not perform any action on behalf of the Trust independent of Mr. Lena's control.

The evidence adduced at trial established all of the above except that the Trust was irrevocable. Plaintiff's presentation of evidence established that the Lenas exercised dominion and control over the Trust. They continued to live on the Property and claimed it as their homestead. They paid all of the bills due on the Property from their personal funds, rather than from the Trust's funds. In fact, the Trust had no assets of its own other than real property. Also, the mortgage on the Property was never assumed by the Trust, yet the Lenas purported to have transferred the collateral of the mortgage into the Trust for the sole benefit of their children. In essence, the Lenas continued to live as they did before the Trust existed.

The evidence also showed that the trustees were mere figureheads that did not perform any duties on behalf of the Trust independent of Mr. Lena's control. Kachouroff stated in his response to Plaintiff's interrogatories that he did not recall performing any duties on behalf of the Trust. Pl. Ex. 25. During Kachouroff's time as Trustee, Mr. Lena made arrangements to have the roof replaced on the Property without contacting Kachouroff. Mr. Lena explained at trial that exigent circumstances forced him to act quickly, and he was unable to contact Kachouroff, who no longer lived in Florida. Pursuant to Mr. Lena's role as General Manager of the Trust, he has the power to operate the company's day-to-day affairs and business matters. Pl. Ex. 14, p. 15. But if the General Manager buys, sells, or obligates the Trust to buy

or sell, "properties and/or goods that exceed Five Thousand Dollars ($5,000.00)," he must have the approval of a Trustee. Id. Clearly, the replacement of a roof would entail an expenditure in excess of $5,000.00. However, the precise amount paid by Mr. Lena is not in the record.

The only act on record performed by a trustee is that carried out by Christina Henley. On January 7, 2008, Henley was appointed as Trustee, and on the same day she conveyed the Property by quitclaim deed to Chris Angelo Lena and Theodore A. Lena at the direction of Mr. Lena. Pl. Ex. 8. Henley served as Trustee only until January 9, 2008, when the Trust was dissolved by Mr. Lena. Pl. Ex. 9. Thus, it is evident that Henley was appointed merely to accomplish the purpose of Mr. Lena. Aside from this one act, which was under the control of Mr. Lena, the record is void of any acts performed by trustees. The only fact that weighs in favor of the Lenas is that they established an irrevocable trust. However, this fact alone does not negate the reality that the Lenas exercised dominion and control over the Trust.

The second Shades Ridge factor evaluates whether the taxpayer used trust funds to pay his or her personal expenses. See Shades Ridge, 888 F.2d at 729. The Trust's sole asset consists of real property. Thus, no liquid funds are available for the Lenas to use for their personal expenses. This does not mean, however, that the Lenas have not received a personal benefit from the Trust. The Lenas have received the benefit of living on the Property, and they

17

continue to receive a property tax reduction by claiming the Property as their homestead.

The third Shades Ridge factor assesses whether there is a familial relationship between the officers of the Trust and the Lenas. See Shades Ridge, 888 F.2d at 729. Mr. Lena was appointed as the Trust's General Manager, and although not formalized in the Trust document, Mrs. Lena served as the Trust's Secretary and Constantine Lena, Mr. Lena's brother, was appointed the Protector of the Trust. Transcript pp. 109, 117. Although no family members were formally titled "trustees", the evidence adduced at trial established that Mr. Lena has controlled the Trust such that he is a de facto trustee. Notwithstanding the fact that Mr. Lena was titled "General Manager" of the Trust, his control over the Trust equaled, if not exceeded, the power granted to trustees under the Trust.

In consideration of the following factors: 1) the control the Lenas exercised over the Trust and its assets, 2) the use of trust funds to pay the Lenas' personal expenses, and 3) the family relationship, if any, between the Lenas and the Trust's officers, the Court finds that Plaintiff established that the Trust is a nominee of the Lenas. See Shades Ridge, 888 F.2d at 729. Thus, the Lenas retained all property interests in the Property that they lawfully possessed prior to the July 1, 1994 conveyance of the Property to the Trust. As such, Plaintiff may attach and foreclose its tax lien against the Property.

## IV. Conclusion

The Court finds that the IRS assessments against the Lenas are valid, and Plaintiff may attach any and all property interests held by the Lenas. Further, the Court finds that the Lenas possess an interest in the Property to which Plaintiff may attach and foreclose a lien in satisfaction of the tax assessments.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That the assessments made by the Internal Revenue Service against Defendants Evangelos Lena and Joanne Lena dated August 1, 1995 and May 15, 1996, be and the same are hereby **DECLARED** valid;

2. That the assessment made by the Internal Revenue Service against Defendant Evangelos Lena dated April 15, 1996, be and the same is hereby **DECLARED** valid;

3. That Plaintiff United States of America does have and recover from Evangelos and Joanne Lena the amount of $108,444.86, together with interest thereon from the date of February 25, 2008, for all of which let execution issue;

4. That Plaintiff United States of America does have and recover from Evangelos Lena the amount of $2,444.54, together with interest thereon from the date of February 25, 2008, for all of which let execution issue;

5. That the federal tax liens previously imposed against Defendant A.J.L. Trust be and the same are hereby **DECLARED** valid;

6. On or before noon on Thursday, June 26, 2008, Plaintiff shall file the appropriate Motion to foreclose its lien against the

real property located at: 217 Bilbao Street, Royal Palm Beach, Florida, with the legal description "Lot 49, Blk K, LaMancha Subdivision, Royal Palm Beach, Palm Beach County as recorded in volume 5656, Page 1466 and plat book 29, page 165 Palm Beach County," together with all necessary Exhibits and Affidavits;

7. On or before noon on Thursday, June 26, 2008, Plaintiff shall file a Proposed Final Judgment setting forth the amounts to be recovered by the United States of America, the interest rate that applies to each amount, and the legal basis for the interest rate. Plaintiff shall also submit Affidavits and Exhibits for any court costs it seeks, together with an itemized list of said costs; and

8. On or before noon on Thursday, June 26, 2008, Plaintiff shall file any other Motions it deems necessary for the prompt disposition of this matter.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___11th___ day of June, 2008.

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

Evangelos Lena, pro se
217 Bilbao Street
West Palm Beach, FL 33411

Joanne Lena, pro se
217 Bilbao Street
West Palm Beach, FL 33411